# EXHIBIT A



**United States Attorney's Office**
*Southern District of New York*
*Civil Frauds Unit*
86 Chambers Street, 3rd Floor
New York, New York 10007

## Civil Investigative Demand

| TO: New York City Department of Health and Mental Hygiene | Civil Investigative Demand No. 19-127 |
|---|---|

This Civil Investigative Demand is issued pursuant to the False Claims Act, 31 U.S.C. § 3733, in the course of a False Claims Act investigation, to determine whether there is or has been a violation of 31 U.S.C. § 3729 *et seq.*

The False Claims Act investigation concerns allegations that false claims submitted in connection with Section 8 subsidies.

| Assistant United States Attorney/ False Claims Act Investigator | Address and Phone Number | |
|---|---|---|
| Jacob Lillywhite, Arastu Chaudhury | 86 Chambers Street, 3rd Floor, New York, NY 10007    **Ph:** (212) 637-2639 | |

| | | |
|---|---|---|
| ✓ | You are required by this Demand to produce any and all documents in your possession that are responsive to the requests set forth in the attached rider. You shall produce such documentary material responsive to this Demand under a sworn certificate, as required by 31 U.S.C. § 3733(f). You are required to produce these documents on the date and at the time designated, or on a date mutually agreed upon between you and the Assistant United States Attorney named above, to the United States Attorney's Office, 86 Chambers Street, 3rd fl., New York, NY 10007, to the attention of Jacob Lillywhite, (212) 637-2639 | **Date:** 7/15/2019 **Time:** 9:00am |
| ☐ | You are required by this Demand to answer the written interrogatories set forth in the attached rider. Each interrogatory shall be answered separately and fully in writing under oath. Your submission of the answers to this Demand shall be accompanied by a sworn certificate, as required by 31 U.S.C. § 3733(f). You are required to submit the answers on the date and at the time designated, or on a date mutually agreed upon between you and the Assistant United States Attorney named above, to the United States Attorney's Office, 86 Chambers Street, 3rd fl., New York, NY 10007, to the attention of Jacob Lillywhite, (212) 637-2639 | **Date:** **Time:** |
| ☐ | You are required by this Demand to provide oral testimony under oath commencing on the date and at the time designated at the United States Attorney's Office, 86 Chambers Street, 3rd floor, New York, NY 10007, or at such time and in such place that may be agreed upon between the Assistant United States Attorney named above and you. Your attendance and testimony are necessary to the conduct of the False Claims Act investigation described above. You have the right to be accompanied by an attorney or other representative during the oral examination. The transcript of your oral examination and any exhibits will be in the possession of Jacob Lillywhite, (212) 637-2639 | **Date:** **Time:** |

Issued at New York, New York, this __1st__ day of __July__, 20 __19__

*Geoffrey S. Berman /JL*

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

This is the original of the Demand; no copies have been served on other parties.

**RIDER A TO CIVIL INVESTIGATIVE DEMAND NO. 19-127 TO DOHMH**

**DEFINITIONS**

1. As used in this civil investigative demand (the "CID"), the terms "you," "your," and "DOHMH" refer to the New York City Department of Health and Mental Hygiene and any officer, employee, agent, representative, or person acting or purporting to act on behalf of it.

2. As used in this CID, the term "Target Properties" means (a) any properties owned or controlled by the individuals and firms listed in Rider C to the CID, including but not limited to the properties identified by street address in Rider D to the CID, and (b) any other properties later identified in writing by the Government.

3. As used in this CID, the term "Relevant EBLL" means a blood-lead level equal to or greater than 5 micrograms per deciliter reported to DOHMH for a person who, at the time of that test, resided at one of the Target Properties.

4. As used in this CID, the term "documents" means without limitation any item described by Federal Rule of Civil Procedure 34, and any written, printed, typed, graphic, photographed, and recorded or otherwise reproduced or stored communication or representation, including but not limited to letters, memoranda, correspondences, e-mails, and canceled checks.  This term includes whatever form and by whatever means such documents may have been created or stored including, but not limited to: any handmade form, such as writing; any photographic form, such as microfilm, microfiche, prints, slides, negatives, photocopies; any mechanical form such as printing, or typing; any electrical, electronic, or magnetic form such as tape recordings, cassettes, or any information on an electronic or magnetic storage device such as floppy diskettes, hard disks, backup tapes, CD-ROMS, optical discs, printer buffers, smart cards, memory calculators, electronic dialers, hard drives, or electronic notebooks; and any printout or readout from any magnetic storage device.  All documents provided in response to this CID are to include all marginalia and post-its, as well as any attachments referred to in or incorporated by the documents.  All documents provided in response to this CID are to include all versions of each responsive document, including all drafts and copies of each document.

5. As used in this CID, the term "concerning" means relating to, referring to, describing, evidencing, or constituting.

6. As used in this CID, the terms "and" and "or" both mean "and/or."

7. As used in this CID, the terms "any" and "all" both mean "any and all."

8. As used in this CID, the term "including" means "including, but not limited to."

## INSTRUCTIONS

A. Unless otherwise specified, this CID requires production of all documents and information from 2012 to the present **that are** responsive to the requests and interrogatories below, and which are in your possession, custody, or control regardless of where such documents or information are located. You shall include all documents or information that relate to or were used during the relevant time period even if they had been prepared or published prior. Further, if any document requested in this CID is no longer in your possession, custody, or control, identify such document completely and provide the following information regarding the document:

   i. Its present location and custodian; and

   ii. The manner in which it was disposed, including the date of disposal, the reason of disposal, the person authorizing the disposal, and the person(s) who disposed of the document.

B. If no documents exist that are responsive to a request below, you shall include, in your response to this CID and at the time of production, a written statement to that effect.

C. For any document or part thereof that you decide not to produce by reason of a claim of privilege, you shall state the privilege being claimed, give an explanation for your claim of such privilege, and provide the following information concerning the putatively privileged document:

   i. The type of document;

   ii. The date of the document;

   iii. The subject matter of the document;

   iv. The author of the document, including his or her address, telephone number, and

2

          role in relation to you;

      v. All recipients of the document, including their addresses, telephone numbers, and roles in relation to you;

      vi. The number of pages of the document.

D. In responding to this CID, all documents produced shall be segregated and labeled so as to identify which request(s) such documents respond to. Alternatively, you shall identify, by bates-numbers, the documents responsive to each request herein.

E. In responding to this CID, you shall locate, gather, and produce documents from your files and other sources in such a manner as to ensure that the source and location of each document may be readily determined.

F. In responding to this CID, if you locate responsive documents in file folders or other containers, you shall produce these folders and containers, including any labels identifying such folders or containers, together with the responsive documents contained therein.

G. In responding to this CID, documents attached to each other shall not be separated unless you also identify such separation and provide records sufficient to permit the reconstruction of such grouping of documents.

H. In responding to this CID, if you locate any document that have markings on both sides, you shall produce both sides of the document.

I. In responding to this CID, you shall locate, gather, and produce documents or information stored electronically in accordance with the "Document and ESI Production Specifications," attached as Rider B to the CID.

J. Your obligation of production in response to this CID is a continuing one. Accordingly, documents or information located at any time after a response is due shall be promptly produced in the manner specified by this CID.

## INTERROGATORIES

1. For each Relevant EBLL, provide—in Excel spreadsheets or database form, produced natively—the following information:

3

  a. the date of the lead test indicating a Relevant EBLL;

  b. the property address, including apartment number, where the individual with the Relevant EBLL resided at the time the EBLL was reported;

  c. the age of the of individual with the Relevant EBLL at the time the EBLL was reported;

  d. the blood-lead level(s) reported to DOHMH;

  e. the date any notice of the EBLL was sent to the property owner;

  f. the date of any investigation performed by DOHMH in response to the EBLL;

  g. the results of any investigation performed by DOHMH in response to the EBLL;

  h. the date the results of any investigation performed by DOHMH in response to the EBLL were sent to the individual or entity who owned or controlled the Target Property; and

  i. the date any identified lead hazards were cleared in the apartment where the individual with the Relevant EBLL resided, if clearance occurred.

## **DOCUMENTS REQUESTED**

1. For each Relevant EBLL, any documents concerning that Relevant EBLL sent by DOHMH to the individual or entity who owned or controlled the Target Property, including any notice or violation information and any response thereto.

2. For each environmental investigation performed by DOHMH for a Relevant EBLL, documents sufficient to show the results of the environmental investigation, including but not limited to the source of the EBLL as determined by DOHMH.

**RIDER B TO CIVIL INVESTIGATIVE DEMAND NO. 19-127 TO DOHMH**

**Document and ESI Production Specifications**

I. **Electronically Stored Information**

   a. Electronically stored information ("ESI") should be produced in accordance with these specifications. If compliance with these specifications would cause undue burden, please contact the Assistant United States Attorney on the subpoena to discuss. Please do not vary from these standards without prior approval from that attorney.

   b. SDNY currently uses Concordance and IPRO to manage large-scale ESI productions.

   c. *All ESI must be produced in both native file format, and electronically converted TIFF image format including extracted text and load files.*

II. **Transactional and Database Records**

   a. Transactional records extracted from a database shall be produced in delimited ASCII text data format or in another easily computer-importable, non-proprietary file format that does not incur a loss of data. Field headers shall be included for each column of data, and a data dictionary or other explanation of the contents of each column shall be provided.

   b. Image data of items associated with transactions, such as checks, shall be produced in graphic data files in a commonly readable, non-proprietary format, such as TIFF or JPEG, with the highest image quality maintained, and named in a manner that uniquely associates them with the relevant transaction record(s).

   c. Where responsive ESI is contained in a complex relational or proprietary database (*e.g.*, Oracle, SAP, SQL, MySQL, QuickBooks) from which records cannot readily be exported without loss of related data, please call the Assistant U.S. Attorney to arrange a meet-and-confer. Identify the database type and version number, and provide the database dictionary and user manuals or other documentation sufficient to describe the structure and content of the database. The meet-and-confer will evaluate, for example, production of a backup of the database (*e.g.*, an .SDF file for a SQL implementation), or other alternatives, such as delimited ASCII exports of custom queries.

III. **Native File Format for ESI**

   a. All documents must be provided in the original file or "native" format in which the document was created.

   b. System and executable files should not be produced unless specifically requested.

   c. E-mail files must be delivered in their native format (*e.g.*, Outlook .PST or .msg, Lotus

.NSF, etc.).

d. Relevant information stored in database applications (*e.g.*, Oracle, Sybase, or MSSQL) should only be produced after first consulting with the SDNY attorney to determine method and format of delivery.

e. Files must be copied and produced in such a manner as to preserve all associated document and file system metadata.

f. Note: a PDF file is *not* considered a native file unless the document was initially created as a PDF.

IV. **Electronically Converted TIFF Format for ESI**

a. <u>In addition to the native format</u>, you must also provide an electronically-produced (*i.e.*, not a printed and scanned) TIFF image version, including extracted text and load files, and available metadata, for each document produced in native format.

b. The electronically converted TIFF production must comply with the TIFF Image Production and Cross Reference File Specifications set forth below.

c. The electronically converted TIFF production must be provided in a Concordance database (.dcb) with load (.dat) file, images, and image cross-reference file (.lfp). *See* the Concordance Delivered Fields Specifications below.

V. **Custodian, ESI Source Location, and Path—Naming Conventions**

a. For each document that is produced, the custodian; the ESI source location (*e.g.*, network server, network hard drive, media); and the network or folder path, must be specified.

b. All ESI provided must be broken down in the following folder structure: by custodian, then by data category (*e.g.*, JohnDoe/Mailfiles/datafiles/desktopfiles).

VI. **Production of Paper Records**

a. Paper records should be produced as data in <u>both Concordance format, and in ASCII delimited format</u>, as detailed below.
   1. Concordance database (.dcb) format:
      i. In most instances, the StartBates should be the Image Key field unless another field has been designated the key field by the Government.
      ii. All fields should be indexed.

   2. ASCII delimited text file (.dat) format
      i. The first line of the text file must contain the field names.
      ii. The delimiters used should be the default values used by Concordance: comma (ASCII value 20); quote (ASCII value 254); and newline (ASCII value 174).

        iii. Produce a page header indicator in the following format, <<**batesno**>>, on a separate line for every page of OCR.

   b. If there will be more than one production, please confirm the database fields and structure remain consistent between data deliveries.

## VII. Concordance Delivered Fields Specifications

The database and load file provided must contain, at minimum, the first and last Bates number for each document, and all applicable OCR text.  OCR text should be incorporated directly in the Concordance database (.dcb) and the ASCII load file (.dat), and *not* delivered in separate text files.

## VIII. TIFF Image Production and Cross Reference File Specifications

   a. Documents should be electronically converted or, if need be, scanned (at 300 dpi) into single-page CCITT Group IV TIFF files.  TIFF file names should match the assigned Bates number of the underlying document page, should be unique, and sequentially numbered.  Searchable PDF files will be accepted only after a consultation between the provider and USAO technical support staff.  Multi-page TIFF files are strongly discouraged.

   b. Bates numbers should be electronically "endorsed" onto images.  The file name assigned to the image should match the underlying document's Bates number.  Bates numbers should be alpha-numeric, with the numeric portion of the stamp being "zero-filled".  As an example, as assigned Bates numbered series of documents such as "ABC1", "ABC2", "ABC3" would be unacceptable, whereas "ABC000001", "ABC000002", "ABC000003" is preferred.

   c. Images should be placed on delivered media in a master folder named **XIMAGES**.

   d. Cross-reference File. TIFF files must be accompanied with an image "cross-reference file," preferably in IPRO .lfp format. This file associates each Bates number with the corresponding single-page TIFF file name and indicates its location on the media provided. The file should contain one line for every page in the collection, and must contain the document Bates number and the full DOS path to the image, beginning with the media volume.  Below is a sample IPRO file:

```
IM,ABC-000001,D,0,@VOL01;IMG_0000001;ABC-000001.tif;2,0
IM,ABC-000002,,0,@VOL01;IMG_0000001;ABC-000002.tif;2,0
IM,3542-S-000001,D,0,@VOL01;IMG_0000001;3542-S-000001.tif;2,0
IM,3542-S-000002,,0,@VOL01;IMG_0000001;3542-S-000002.tif;2,0
IM,3542-S-000003,,0,@VOL01;IMG_0000001;3542-S-000003.tif;2,0
```

## IX. Delivery Media

   a. All data and image deliveries must be made on CD, DVD, or USB 2.0 external hard drive, depending on data volume.